## TULLY et al. v. TRIANGLE FILM CORP. et al.

(District Court, S. D. New York.   February 2, 1916.)

1. COPYRIGHTS ⬤➡81—SUITS FOR INFRINGEMENT—PARTIES.

Under equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii), providing that all persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs, where the author of a copyrighted drama assigned the right to produce and present it upon the stage by a company of players, reserving all other rights, including the moving picture rights, the licensee was not a proper party to a suit for infringement of the copyright by producing a motion picture play, though this production would be financially injurious to the licensee by diverting persons who might see the play from doing so, as the interest referred to in the rule means an interest in law, and does not include a possible injury for which a person has not retained for himself any right or redress.

[Ed. Note.—For other cases, see Copyrights, Dec. Dig. ⬤➡81.]

2. EQUITY ⬤➡149—MISJOINDER OF PARTIES PLAINTIFF—EFFECT.

In a suit in equity, the misjoinder of a party plaintiff having no interest, and to whom no relief can be granted, renders the complaint multifarious and devoid of equity, and requires the dismissal of the complaint.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 342, 368-370; Dec. Dig. ⬤➡149.]

3. COPYRIGHTS ⬤➡82—SUITS FOR INFRINGEMENT—EXHIBITS.

Under the express provisions of Supreme Court rule 2 (29 Sup. Ct. xlviii), in a suit for infringement, a copy of the work alleged to be infringed should accompany the complaint, or its absence should be explained.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 72, 73; Dec. Dig. ⬤➡82.]

4. COPYRIGHTS ⬤➡82—PLEADING—AMENDMENT—TERMS.

Where, in a suit for infringement of a copyrighted drama, an incorrect copy of the work was filed with the complaint, whether this required that plaintiff should, as a condition of amendment, be compelled to pay certain expenses incurred by defendants, was a matter that could be dealt with on the trial, when the trial judge could determine whether the differences between the copyrighted work and the manuscript submitted to the court were of real importance, or only of minor consequence, and it would not be determined on a motion to dismiss.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. §§ 72, 73; Dec. Dig. ⬤➡82.]

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by Richard Walton Tully and another against the Triangle Film Corporation and others. Bill dismissed.

House, Grossman & Vorhaus, of New York City (Alfred Beekmann, of New York City, of counsel), for plaintiffs.

Walter N. Seligsberg and J. Hampden Dougherty, Jr., both of New York City, for defendants.

MAYER, District Judge. The suit as alleged in the first paragraph of the complaint is one arising under the Copyright Law of the United States (Act March 4, 1909, c. 320, 35 Stat. 1075 [Comp. St. 1913, §§ 9517–9584]). The plaintiffs charge defendants with infringement of a copyrighted drama known as "A Bird of Paradise." Defendants move to dismiss the bill because of a misjoinder of parties plaintiff and a failure to comply with rule 2 of the United States Supreme Court (29 Sup. Ct. xlviii).

The bill alleges, in substance, that the plaintiff Tully, as the author and originator, composed and wrote a dramatic composition under the name of "A Bird of Paradise," and thereupon and in conformity with the Copyright Law obtained a copyright of which he is the sole owner. It is further alleged:

"Third. That thereafter the said Richard Walton Tully duly transferred and assigned to the complainant Espladian Producing Company the sole and exclusive right, license, and privilege to produce and present the said dramatic composition in the United States and Canada upon the stage by a company of players, reserving all other rights of every name and nature in and to the said dramatic composition unto himself, including the right to produce and present the same in motion picture photo play form, and that the complainants herein are jointly interested as aforesaid in the said dramatic composition, and all and singular the right, title, and interest thereof, and in the conduct and result of this action."

Finally, it is set forth that defendants have infringed and are infringing the copyright by the production of a motion picture photo play entitled "Aloha Oe."

[1] From the foregoing it will be seen that the Espladian Producing Company is the exclusive licensee to produce the play "upon the stage by a company of players," and that all other rights, such as motion picture rights, remain in and were reserved by Tully, the author. When, therefore, the Espladian Producing Company became such licensee, it did so with the knowledge that Tully at any time and at any place could produce a so-called motion picture photo play, and if Tully could do this then, of course, any licensee of his could do the same. It seems to me entirely clear that the Espladian Producing Company has no right or interest in respect of the presentation by motion pictures of "A Bird of Paradise." Equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) provides:

"All persons having an interest in the subject of the action and in obtaining the relief demanded may join as plaintiffs. * * * Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when any one refuses to join he may for such reason be made a defendant."

Of course, the interest referred to in the rule means an interest in law. It cannot mean anything else, and certainly cannot mean a pos-

sible injury for which a person has not retained for himself any right or redress. Gaumont Co. v. Hatch (D. C.) 208 Fed. 378, does not present the same state of facts as the case at bar; for in that case two owners of a moving picture film (lessor and lessee) were joined as plaintiffs, whereas here the Espladian Producing Company has no interest whatever in the motion picture rights.

It is urged that the production by the defendants of a motion picture presentation of a copyrighted work is and will be financially injurious to the Espladian Producing Company, by diverting persons who might see the play from attending the theater, so as to go instead to the less expensive motion picture play. But that suggestion is quite beyond the point, and, even if plaintiffs are right in what they think may be the injury inflicted and continuing, the Espladian Producing Company cannot complain, because that was one of the probabilities to be contemplated when Tully reserved the motion picture rights.

[2] The misjoinder of a party plaintiff having no interest, and to whom no relief can be granted, renders the complaint multifarious and devoid of equity, and therefore the complaint must be dismissed.

[3] A rather important question of practice has arisen in this case, which I will refer to for the information of the bar. Under section 25 of the Copyright Law, it is provided:

"Rules and regulations for practice and procedure under this section shall be prescribed by the Supreme Court of the United States."

In pursuance of the authority thus conferred, the Supreme Court adopted, among others, rule 2, as follows:

"A copy of the alleged infringement of copyright, if actually made, and a copy of the work alleged to be infringed, should accompany the petition, or its absence be explained; except in cases of alleged infringement by the public performance of dramatic and dramatico-musical compositions, the delivery of lectures, sermons, addresses, and so forth, the infringement of copyright upon sculptures and other similar works and in any case where it is not feasible."

The practical value of this rule is well demonstrated in this case. A motion for preliminary injunction was made on the complaint and various affidavits, but a copy of the work alleged to be infringed did not accompany the complaint, nor was any excuse set forth to explain the failure to submit such a copy. Later a document was submitted which purported to be a copy of the copyrighted work. After investigation by defendants in the office of the Librarian of Congress, it was found that this copy was not accurate, and it is claimed that the differences between the copy submitted to the court and the copyrighted work on file are material, so as to go essentially to the questions which will ultimately come up for decision. Of course, I do not at this time know the merits of this claim; but the point is that the court has not had before it a copy of the work alleged to have been infringed. This situation was not, in any manner, the fault of counsel, but was due to an error (possibly inadvertent) on the part of one of the plaintiffs.

But the foregoing incident illustrates rather strikingly the importance and necessity of the Supreme Court rule. A copy of the

work alleged to be infringed should accompany the complaint, or, as the rule says, its absence be explained. It sometimes happens that redress by injunction in cases of this kind must be speedily obtained in order to prevent irreparable injury, and that the plaintiff may not have at hand a copy of the manuscript, whereas he can describe, for all practical purposes, the substance of the subject-matter of his copyrighted work; but the rule must be followed, and, if the work cannot be produced, satisfactory reasons for its absence must be presented.

Of course, as the rule points out, in cases of alleged infringement of certain kinds, the production of the alleged infringement is excepted, for the obvious reason that such production is either not possible or not practicable. I think that a hard and fast rule should not be laid down down as to the penalty for failure to comply with rule 2. In some instances such failure would call for the dismissal of the complaint, and in other instances an opportunity should be accorded by the court, upon such terms as may seem proper, or upon no terms at all, to amend the complaint, so that it may be accompanied with the copyrighted work. In the case at bar the question is not of any practical importance, except in fixing terms upon which the process and pleading of plaintiffs may be amended.

[4] The defendants urge that certain expenses should be paid as a condition of amendment. That situation can be dealt with on the trial of the suit, when the trial judge can determine whether the differences between the copyrighted work and the manuscript submitted to the court were of real importance, or only of minor consequence.

The motion to dismiss the bill is granted, with leave to plaintiff Tully to amend the process and bill, and with the question of costs and disbursements reserved until the trial of the suit. Under the heading of disbursements thus reserved for further consideration will be included those to which the defendants have been put in sending telegrams from California, as well as those incurred in Washington.

Settle on two days' notice.